Council, you may proceed. Thank you, Your Honors. Good morning. My name is Martha Hall. I represent the appellant Raul Diaz-Martinez. I would like to direct my opening arguments to the sufficiency arguments in this case and specifically to our argument that the government failed to prove that the defendant appellant is, in fact, an alien. I would note that the government's response simply contains no case law except for a case that deals with the motion to dismiss, which is entirely an opposite. What we have here is a case where the government failed to present evidence of foreign birth or foreign nationality on behalf of the defendant appellant. Well, do they have to? They do. I think that this Court... Well, isn't this a 1326? This is a 1326. They have to prove that the defendant was an alien. That's an element. That is an element. All right. Who was deported. Correct. And reenters. Correct. And is found. Correct. Well, if they established the alienage at the time of the deportation proceedings the first time, is that not enough? That's... The deportation itself is not enough. All right. And even statements made during the deportation hearing are not enough. And those are the cases that are cited... Are they enough to introduce Agent Caesar's testimony that Diaz had previously claimed to be the wrong person? That's our argument is that it's not enough. We concede that the government proved that the defendant appellant was not Raul Diaz Martinez. The question then becomes who is he and of what country is he a citizen? And that the government failed to... The only thing that suffices is a birth certificate from wherever. I don't think that's the only thing that suffices. In fact, in Sotelo, you had a defendant who was previously deported, but during the deportation, the prior defendant that the proceeding was not simply a sort of interrogation, uncounseled interrogation. Well, of course, he doesn't have to be represented by counsel in the deportation hearing, but what you're asking for is a rule that says in whatever context, whatever admissions are made, as long as it was without counsel, they're not sufficient. Well, I think this court has already issued that rule. I think that this court has already stated that uncounseled statements by an individual in deportation hearings are not sufficient to prove alienage. And we see why here, because we have several different statements during deportation proceedings. Are they not enough cumulatively? The other item is his inappropriate suggestion that he was, in fact, the wrong person, a different person, a U.S. citizen. The problem is that we have no corroborating evidence from the government to indicate why we should believe one statement versus another, why there was one particular statement which had credibility over the others. Perhaps if he had been represented by counsel on one of those occasions in deportation proceedings, that would be sufficient under Sotelo, but we don't have that here. What we have is just a series of conflicting statements made during deportation hearings, and no corroboration whatsoever as to which one is more reliable than the others. But don't juries do that all the time? They can listen to a witness and accept some of what the witness says and reject others? Well, here's the point. They get to listen to the witness. The witness is on the stand. There was no one on the stand here. This court routinely notes the difference between being able to view the witness and see the witness's demeanor during testimony as the reason why you should defer to the district court judge. Because as a court of appeals, you don't get to see that witness while testifying. You don't get to observe the demeanor. Here, we just have prior statements introduced by the government, but there's no witness whose visage is visible, who can be judged based on their demeanor, their behavior, their nature of the statements themselves, whether they sound reliable or not. I agree with you that we don't have a witness here, but evaluating the difference between one statement, the circumstances under which it was made, and another statement, which appears to contradict it, making a judgment. In this case, we have two statements which were both made during – I mean, they both seem to be made under similar circumstances, in the circumstance of a deportation hearing, an uncounseled statement in the context of a deportation hearing. And I don't see that there's been any evidence submitted by the government to say why one or the other of those is more reliable. More than just a statement. May 24, 2001, deportation. Appellant – during the hearing, the appellant stated that he had entered the United States on May 17, 2001, falsely representing that he was a U.S. citizen. So it's more than just simply saying, are you a citizen of Mexico? Yes, Your Honor. That's where I want to be deported to. Of course, he's uncounseled. It's a little more than that. Here, in the prior, there was interrogation, and he agreed not only that he was a native and citizen of Mexico, he also agreed that he had falsely represented he was a U.S. citizen. Yes, and then we have the following two deportation hearings where he claims that he was a U.S. citizen and that he was not a Mexican citizen. In fact, that's what he had here, and the government put on two witnesses who said the name he's claiming title to is me and the father of the person he's claiming title to. Right. Now, if we had some more corroboration as to his being the other person or being that individual in the May 24 deportation hearing, if we had some sort of identification, some sort of corroboration. The same as the person in those prior deportation hearings? I'm sorry. No. That on May 24, 2001, there was a different name proffered by the defendant, Roberto Velazquez Julio. So what I'm saying is if the government had presented something, some corroboration that he was indeed that particular person, some reason that that should be accredited, that that statement should be credited, that it's trustworthy because this court's prior cases have clearly held that it's insufficient just to submit an uncounseled statement from a prior deportation hearing to prove alienage. I mean, there are cases from this court which seem to indicate that you really do need to present some sort of documentation to prove foreign birth. Now, I think that there are other cases such as Sotelo which say, well, there is other evidence. But no case says that you have to come up with the birth certificate only. That's the only thing that will do. No case says that that's the only thing that will suffice. But here, our point is that there's nothing that the government has offered to prove that he was really, you know, Roberto Velazquez Julio as opposed to another I'm not saying that this... Your time is fleeting. Could we switch? As Judge O'Scallion said, this is a 1326 case. And your client did not apply for readmission under 1326. What do you do with the case of U.S. v. Pena-Heine, if I pronounced it correctly? I think you did pronounce it correctly. It's a little difficult. And I can see that the issue of whether or not he reapplied is a difficult issue for us because the language does appear to track I-212. However, I don't know if this court wants to go so far as to say that the only consent or the only permission that is sufficient to rebut the 1326 charge is this fairly laborious reapplication procedure where you send off your documents through the consulate to the Attorney General's office. How do we characterize and what do we do with the fact that an immigration judge released the defendant to the streets? What is that termed then? I think it's troubling and I think it would be problematic to say that an immigration judge's permission for someone to remain in the United States is insufficient and that someone could still be prosecuted for a prior deportation under 1326 despite the fact that there had been an intervening act on behalf of the Attorney General through an immigration judge allowing the person to remain in the United States. Well, here we had immigration proceedings that were simply administratively closed, i.e., just sort of put off the calendar. And you were saying? Well, you can say that they were administratively closed, but what happened is that the defendant appellate, Mr. Diaz-Martinez, if you will, was released to the streets of the United States. He was not deported. He was not removed. He was not physically taken out of the country. The judge did not order that he had to be on the issue of citizenship. I believe that what happened is the IJ found that there was not compelling evidence to actually make a finding that he was in fact a U.S. citizen, but at the same time, there was too much evidence for him to find that he should be deported. Thank you, Counsel. Your time has expired. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Neville Headley for the United States. With respect to the sufficiency of the evidence, I think it's important to remain focused that this is what the essence of the defendant's argument is, is that there was insufficient evidence presented to the jury and that a reasonable jury could not, as a rational fact finder, conclude that the elements of the offense had been met. And with respect to alienage, I think the contradictions that were presented, I mean, it wasn't, I don't think Defense Defendant's Counsel is entirely correct. Two deportation tapes were played at the trial. So there was a chance for the jury to consider hearing testimony, hearing the back and forth engagement between the immigration judge at both hearings and the appellant in this case. And in those, he made contradictory statements. And I think as Your Honor pointed out, the jury can weigh that. The jury can weigh the contradictions and reach a rational decision that, gee, he was telling the truth in one case, perhaps the 2001 deportation, and he's fibbing in the second case. He's making a false claim for U.S. citizenship or he's proffering that he's someone else. So I think... What does the government rely on to establish alienage? Well, I think we rely on several things. First of all, the deportation hearing from 2001, the immigration judge's order that he's an alien, that he's deported, his admissions in that immigration hearing. I think coupled with that, you have the contradictions that he makes in the 2002, I believe April 2002, deportation hearing where he's claiming now that he's a United States citizen. I think the jury can weigh that information. Moreover, what you have is you have testimony from the apprehending agents and the scope operator that there was this person who was on trial who was identified by those agents in court as the person who hopped over the fence in the middle of the night and secluded area and tried to hide in the bushes and became abusive and resisted apprehension. I think the jury can reasonably conclude based on that evidence and the other evidence that if this person really is Raul Diaz-Martinez, a United States citizen, that that person doesn't hop the fence in the middle of the night and resist apprehension by the border patrol. He goes to the port of entry and says, I'm Raul Diaz-Martinez, I'm a United States citizen, I need to come into my home country. Or at the very least says, I'm Raul Diaz-Martinez and an immigration judge provided me consent to come to the United States because I was released to the streets of the United States back a month ago. He didn't do that and the jury has that information coupled with the prior deportation hearings, the tapes that they listened to, and then the testimony of the real Raul Diaz-Martinez, who was called, and the father. I think the jury can take all that information in and reach a rational conclusion that this person is an alien, was previously deported, did not have consent to return to the United States, and attempted to make a reasonable conclusion. The defendant in the brief concedes that the standard here is very favorable for the government. Was there sufficient evidence, just sufficient evidence viewed in the light most favorable to the government that a rational jury, a rational fact finder could conclude that the was never presented, Your Honor. That information was made available, but it was never presented. The information with respect to the 2003 hearing was presented and brought out on cross-examination of Agent Caesar. And I think Isn't the jury deciding a question of law as to whether or not the 2003 immigration proceedings established consent? Your Honor, in essence they would be. I think that was the argument and the defense that was put forward at trial. But we're talking about a sufficiency of the evidence standard here on appellate review. And there was sufficient evidence for the jury to conclude that this person didn't follow the proper procedures. There was also evidence put forward of what are the proper procedures. It is filing an I-212. It's not making a claim to an immigration judge with an incomplete record, having a judge who can't render a decision, and then being released into the country because immigration isn't prepared to go forward. And the immigration judge kind of throws up his hands and says, I can't render a determination here. The jury had that in front of them. And if they wanted to make a legal determination that somehow the government had consented to him entering, they could have. But they also had the contrary information, the government's position, which is the only way to seek consent is an I-212, filing an I-212. And I think wrapped up in defendant's argument in its appellate brief, in the defendant's appellate brief, is a legal argument. And I think this is an improper forum in which to hear that argument given that we're talking about a sufficiency of the evidence standard and a challenge, a standard based on sufficiency of the evidence. If defendant wants to challenge that immigration hearing in December 2003 amounted to consent, then there are other avenues to challenge that. Not after a criminal procedure in which the issue is now framed as whether the government put forward sufficient evidence to meet the elements of the offense. I think more proper avenue for challenging that is to challenge the regulations, challenge the statute, the immigration statute and the immigration regs. I think it's Reg 1.212, which sets out how a previously deported alien can reapply for admission to the country. Again, I think the defendant asked the jury as part of his defense to try to get down into the weeds of immigration law. And the jury didn't want to go there. Or if they did, they looked at the competing theories. One, the theory presented by the United States that the legally proper method of seeking consent is to file an I-212 versus the strategy employed by the defendant during the cross-examination of Agent Caesar trying to draw out that the immigration judges in December 2003 letting the defendant back into the country amounted to consent. The jury didn't believe that. The jury didn't see it that way and found that there was sufficient evidence to meet all the elements of the offense. So I think we'd have a different case here if the arrest here was immediately following the release to the streets as opposed to a capture or arrest following that incident. In other words, an additional re-entry. I think so, Your Honor. I don't want to speculate on that. I think there would be a trickier legal challenge. It would be framed quite differently legally whether the immigration judges 2003 non-decision, if you will, amounted to consent. Perhaps that would be a better venue in which to challenge it. But in this case, it's obvious based on the facts that were presented to the jury that the defendant got a break, got a non-decision that allowed him to stay in the United States in a quasi limbo, if you will. He chose to leave the country, go back to Mexico, and approximately a month later, instead of if he really truly believed that he had legal permission to be in the United States or was legally entitled to be in the United States as a United States citizen, he would not have hopped the fence in a clandestine fashion and been found hiding or trying to seclude in an evidence and say, you cannot possibly be a United States citizen or have had consent to be in the United States if this is the means in which you want to enter the country. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Dw Nelson, O'scannlain, Jones